IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALBERT NARRO,

    Applicant,

v.                                              CV 07-0998 JB/WPL

ROBERT ULIBARRI, WARDEN,
AND THE ATTORNEY GENERAL
OF THE STATE OF NEW MEXICO,

    Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Albert Narro was convicted of residential burglary and sentenced to four years in prison. He has filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody. For the reasons explained below, I recommend that the application be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

Narro was charged with burgling a rental house owned by Richard Foster. (Record Proper (RP) 38.) Foster testified that the house had been vacant for about three weeks preceding the burglary. (Trial Tape 3.) Approximately one week before the burglary, he hired Frank and Hope Stroud to refurbish the house so that it could be rented again. A sign advertising the house for rent was in the front yard. On the morning of the burglary, a neighbor called Foster to advise him that someone was entering the house. Foster reported the matter to the police. (*Id.*)

Out of the jury's presence, Officer Hamner testified that he went to the house to investigate. (Trial Tape 4.) He parked on the north side of the residence on Third Street. He saw Narro come around from the front of the house. Hamner asked Narro if he lived at the house. According to

Hamner, Narro responded, "No, but the door was open and he'd gotten the stuff out of the house." (*Id.*) Hamner testified that if Narro had tried to walk away rather than answer the question, he would have stopped him and handcuffed him. The judge ruled that Narro's statement would be admissible. Hamner then repeated his testimony to the jury. He also testified that Narro was holding a large plastic trash bag and a four-to-five gallon bucket. Hamner could see cleaning items in the bucket. He handcuffed Narro and called for assistance. The items in the trash bag and bucket were photographed and returned to the Strouds. He could not present the photographs to the jury because of computer problems. (*Id.*)

Officer Richardson testified out of the jury's presence that he drove Narro to the detention center. (Trial Tape 3.) During the drive, Narro told Richardson that he had "broken into the house." (*Id.*) Richardson then advised Narro that he needed to read him his rights. After Richardson recited two lines from a card containing the *Miranda* warnings, Narro interrupted and again told Richardson that he broke into the house. Richardson was unable to finish the warnings. He testified that he never asked Narro any questions. (*Id.*) After the judge ruled that Narro's statements would be admissible, Richardson gave substantially the same testimony to the jury. (Trial Tape 4.)

Hope Stroud testified that the police asked her to identify the items that were taken from the house. (Trial Tape 3.) She identified cleaning supplies and other items that had been inside the house before the burglary. (*Id.*)

Narro testified that he saw the "for rent" sign in the front yard and went inside the house because the door was open and he was looking for a place to rent. (Trial Tape 4-5.) He denied that he told the officers that he broke into the house and denied that he was carrying the bag and bucket. (Trial Tape 5.)

2

The jury found Narro guilty, and the judge sentenced him to four years in prison as a habitual offender with a prior felony conviction. (RP 69, 110.)¹ Narro appealed his conviction to the New Mexico Court of Appeals. Through counsel, he argued that the evidence was insufficient to establish that the house was a dwelling or that he had the intent to commit a theft when he entered the house and that the trial court erred in instructing the jury as to the definition of a "dwelling house" and in refusing to suppress his statements to the officers. (Doc. 14 Ex. H, K.) The appellate court rejected these arguments. (*Id.* Ex. L.) Counsel petitioned for certiorari from the New Mexico Supreme Court on the instruction and sufficiency-of-the-evidence issues. (*Id.* Ex. M.) The petition was denied. (*Id.* Ex. N.)

## DISCUSSION

### *Claims Raised and Exhaustion*

Narro's federal habeas application raises three claims. The first claim is that his "conviction [was] obtained by use of evidence obtained pursuant to an unlawful arrest." (Doc. 7 at 6.) Narro elaborates on this claim by stating that the prosecution introduced no evidence and that "when DA was ask[ed] by the judge to produce the said evidence the DA claimed there was none, and that the computer was down so any pictures was not introduced [sic]." (*Id.*) The second claim is that his conviction was obtained "by a violation of the privilege of self-incrimination." (*Id.* at 7.) Narro elaborates on this claim by stating, "I answered the officers['] questions truthfully and was arrested." (*Id.*) Narro states his third and final claim as follows: "Arresting office[r] saw me walking towards 3rd street—was not in home. When arresting officer first had contact with me I was walking towards

---

¹ The final year of the sentence was suspended. (RP 110.) Narro absconded immediately after being released on probation, and his probation was subsequently revoked. (RP unnumbered pages.)

3rd street. I was not in the dwelling nor was there any forced entry. Therefore there[']s no evidence of being in the dwelling. See ex[h]ibit A." (Doc. 7 at 9.) Narro did not submit any marked exhibits, but he attached to his application copies of his attorney's briefs in his direct appeal.

Generally, a federal court may not grant habeas relief to a state prisoner unless the prisoner has exhausted the remedies available in state court. *See* 28 U.S.C. § 2254(b)(1). In the answer to Narro's application, Respondents' attorney lists Narro's federal claims and states, "Petitioner has exhausted the three claims by raising the claims in the New Mexico state courts during the direct appeal and state habeas corpus proceeding. Respondents, based on this record, acknowledge Petitioner has exhausted his state court remedies." (Doc. 14 at 3.)

My own review of the record, however, indicates that Narro has not exhausted all of his claims. Narro did not seek certiorari from the New Mexico Supreme Court regarding the self-incrimination claim. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Gordon v. Estep*, 172 Fed. App'x 853, 855 (10th Cir. 2006) (holding that exhaustion requirement was not met because state certiorari petition did not include all of the federal habeas claims). Although Narro's application states that he raised this claim in a state habeas petition (Doc. 7 at 7-8), and Respondents' answer refers to a state habeas proceeding, none of the materials submitted by the parties includes a state habeas petition.[2] Moreover, I can find no indication that the issue of an unlawful arrest was raised in state court, and the specific sufficiency-of-the-evidence issues raised in the federal

---

[2] Because the habeas petition was not attached to Respondents' answer, I ordered Respondents to ensure that "**any state habeas petition and related documents and orders**" were included in the record proper to be filed in this court. (Doc. 15.) The record proper that was subsequently filed does not include a habeas petition.

4

application seem to differ from the sufficiency-of-the-evidence issues raised before the state appellate courts.

Despite these discrepancies, I will address the merits of all of Narro's claims. Habeas relief may be denied on the merits even if the prisoner has not exhausted state remedies. 28 U.S.C. § 2254(b)(2). As explained below, Narro's federal habeas claims are meritless. Furthermore, the exhaustion requirement is waived when "the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3). Respondents expressly waived the exhaustion requirement in their answer. *See Gonzales v. McKune*, 279 F.3d 922, 926 & n.8 (10th Cir. 2002) (holding that the express waiver requirement was satisfied where the respondent's answer "'admit[ted] that petitioner has properly exhausted the issues now presented to this Court'").[3]

### *Standard of Review*

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), if a claim has been adjudicated on the merits in state court, this Court can grant habeas relief only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if the decision "was based on an unreasonable determination of the facts in light of the evidence," *id.* § 2254(d)(2). Determinations of factual issues are presumed to be correct unless the applicant rebuts the presumption of correctness by clear and convincing evidence. *Id.* § 2254(e)(1).

For purposes of § 2254(d)(1), "clearly established law consists of Supreme Court holdings in cases where the facts are at least closely related or similar to the case *sub judice*." *House v. Hatch*,

---

[3] For the same reasons—waiver and lack of merit—I need not decide whether any of Narro's unexhausted claims might now be procedurally barred in state court. *See, e.g., Spears v. Mullin*, 343 F.3d 1215, 1234 (10th Cir. 2003); *Hooks v. Ward*, 184 F.3d 1206, 1216 (10th Cir. 1999).

___ F.3d ___, ___, No. 05-2129, 2008 WL 1947027, at *4 (10th Cir. May 3, 2008). To show that a decision is "contrary to" this clearly established law, an applicant must demonstrate that the state court applied a rule that contradicts the governing law set forth in Supreme Court cases or that it arrived at a different result than the Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 1819 (2007). To show that a decision involved an unreasonable application of clearly established law, an applicant must show that "most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law. It is not enough that the decision is clearly wrong or that the reviewing court would have reached a contrary decision." *Maynard*, 468 F.3d at 671. Instead, "the state court decision must be 'at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable.'" *Id.* (quoting *Badelle v. Correll*, 452 F.3d 648, 655 (7th Cir. 2006)). In other words, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

### *The Arrest and Incriminating Statements*

Narro asserts that his "conviction [was] obtained by use of evidence obtained pursuant to an unlawful arrest" and "by a violation of the privilege of self-incrimination." (Doc. 7 at 6-7.) Informed by the arguments made in state court and by his comment that he "answered the officers['] questions truthfully and was arrested" (*id.* at 7), I interpret Narro's complaint to be that his arrest and

conviction resulted from statements that should have been suppressed because they were involuntary and were given without the *Miranda* warnings.[4]

Based on the testimony of the officers, the facts surrounding Narro's arrest are as follows. Officer Hamner went to Foster's house to investigate a report of a possible break-in. Upon arriving he saw Narro on the property, carrying a bag and a bucket. When he asked Narro if he lived at the house, Narro told him, "No, but the door was open and he'd gotten the stuff out of the house." Narro also informed Officer Richardson, without any questions being asked, that he had broken into the house.

The state trial and appellate courts implicitly accepted the officers' testimony as constituting the facts surrounding Narro's arrest. Narro has not shown that this determination of the facts was unreasonable. *See* 28 U.S.C. § 2254(d)(2). The courts determined that Narro's statements were admissible because, as stated by the appellate court, Narro was not "undergoing custodial interrogation, but rather was being asked preliminary questions, or was not being asked questions at all." (Doc. 14 Ex. L at 4; *see also* Trial Tape 4.)

The voluntariness of a confession "depend[s] on the absence of police overreaching, not on 'free choice' in any broader sense of the word." *Colorado v. Connelly*, 479 U.S. 157, 170 (1986); *see also id.* at 164 ("Absent police conduct causally related to the confession, there is simply no basis

---

[4] When the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a habeas petitioner may not relitigate that claim in federal court. *Stone v. Powell*, 428 U.S. 465, 494 (1976); *see also Miranda v. Cooper*, 967 F.2d 392, 401 (10th Cir. 1992) (holding that *Stone* barred consideration of a claim because the petitioner did not raise it in state court despite the opportunity to do so). *Stone* does not apply to Fifth Amendment claims. *See Withrow v. Williams*, 507 U.S. 680, 682 (1993). *Stone* may be raised *sua sponte*. *See Thomas v. Cowley*, No. 90-6105, 1991 WL 151773, at *4 (10th Cir. Aug. 8, 1991) (unpublished) (citing *Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986)). But since Respondents have not asserted *Stone* as a bar and the unlawful arrest claim can be easily disposed of on the merits, I decline to decide whether *Stone* should bar consideration of Narro's Fourth Amendment claim.

for concluding that any state actor has deprived a criminal defendant of due process of law."). A person must be given the well-known "*Miranda* warnings" if he is subjected to a "custodial interrogation." *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Interrogation occurs when police engage in "any words or actions ... that [they] should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

A person is in custody when he has been "deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. To determine whether a person is in custody for purposes of *Miranda*, there are three categories of police/citizen encounters. *United States v. Griffin*, 7 F.3d 1512, 1516 (10th Cir. 1993).

The first category is voluntary cooperation of a citizen with noncoercive questioning. *Id.* "[A] person is not in custody simply because law enforcement officers question him, and a consensual encounter does not become custodial simply because the person being questioned is the target of an investigation." *United States v. Guerrero-Hernandez*, 95 F.3d 983, 986 (10th Cir. 1996). The second category is a brief investigative detention, often referred to as a "*Terry* stop." *See Griffin*, 7 F.3d at 1516; *see also Terry v. Ohio*, 392 U.S. 1 (1968). A *Terry* stop is authorized when an officer's "observations lead him reasonably to suspect that a particular person has committed, is committing, or is about to commit a crime." *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) (internal quotation marks omitted). During a *Terry* stop, "the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Id.* A person subjected to a *Terry* stop is not considered to be in custody for purposes of *Miranda*. *See Griffin*, 7 F.3d at 1516; *cf. Berkemer*, 468 U.S. at 440 ("The . . . noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained

8

pursuant to such stops are not 'in custody' for the purposes of *Miranda*."). In fact, the Supreme Court has noted that there is an "absence of any suggestion in [its] opinions that *Terry* stops are subject to the dictates of *Miranda*." *Berkemer*, 468 U.S. at 440. The third category is an arrest, which is "usually characterized by highly intrusive or lengthy search or detention." *Griffin*, 7 F.3d at 1516.

An officer may make a warrantless arrest if there is probable cause to believe that a criminal offense has been or is being committed. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause to arrest exists when an officer has learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested." *Guerrero-Hernandez*, 95 F.3d at 986; *see also Dunaway v. New York*, 442 U.S. 200, 208 n.9 (1979). A person's statements during a voluntary encounter or a *Terry* stop may provide the requisite probable cause. *See Berkemer*, 468 U.S. at 439-40.

Based on this precedent and Officer Hamner's testimony, Narro was not in custody for purposes of *Miranda* when Hamner asked him if he lived at the house. At worst, the encounter might be characterized at that point as a *Terry* stop, but more likely the encounter fell into the first category of voluntary cooperation. Hamner's unarticulated intention to stop and handcuff Narro if he attempted to flee is irrelevant. *See Berkemer*, 468 U.S. at 442 ("Although Trooper Williams apparently decided as soon as respondent stepped out of his car that respondent would be taken into custody and charged with a traffic offense, Williams never communicated his intention to respondent. A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."). Either way, *Miranda* warnings were not required. *See Guerrero-*

*Hernandez*, 95 F.3d at 985-86 (holding that person was not in custody, and *Miranda* warnings were not required, when INS officers approached him outdoors in a public place without weapons drawn and asked him if he was in the country legally). And there is nothing to indicate that Hamner engaged in any overreaching such as would render Narro's statement involuntary.

Narro's response to Hamner's question, along with Hamner's observation of the bag and the bucket full of cleaning supplies, provided probable cause to believe that Narro was committing or had committed an offense. Consequently, his warrantless arrest was lawful.

Finally, based on Officer Richardson's testimony, Narro was not being questioned when he made the incriminating statements on the way to the detention center. Although Narro was clearly in custody at that time, *Miranda* warnings were not required because no interrogation occurred. As with Hamner, there is nothing to indicate that the statements were the result of overreaching by Richardson.

In summary, the state courts' decisions were not contrary to and did not involve an unreasonable application of the clearly established federal law regarding custodial interrogations.[5]

---

[5] Alternatively, under the Tenth Circuit's recent decision in *House*, it may be more appropriate to say that there is no clearly established federal law requiring *Miranda* warnings in the circumstances of this case. In *House*, a divided panel of the Tenth Circuit deduced that the Supreme Court's decision in *Carey v. Musladin*, 127 S. Ct. 649 (2006), "clarified" the AEDPA standard of review. *House*, ___ F.3d at ___, 2008 WL 1947027, at *3. *But see id.* at *15 (concluding that it was "unwise to . . . rewrite the AEDPA standards of review" and noting that "the majority's reading of *Musladin* is not the only principled reading" (Murphy, J., concurring in the result)). As a result of *House*, it is difficult to determine the extent to which a general rule, such as the rule requiring *Miranda* warnings, can constitute clearly established law. The *House* majority stated that "federal courts may no longer extract clearly established law from the general legal principles developed in factually distinct contexts," but instead must "engage in a type of line drawing." 2008 1947027, at *4 n.5. In performing this line-drawing, courts "must exercise a refined judgment and determine the actual materiality of the lines (or points) of distinction between existing Supreme Court cases and the particular case at issue . . . ." *Id.*; *see also id.* at *8 n.11 (summarily rejecting argument based on the general legal principle that the Equal Protection Clause applies at every step of a criminal proceeding because "such a general governing legal principle cannot properly comprise clearly established federal law and, absent such law, our inquiry ends.").

### *Sufficiency of the Evidence*

In considering the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard of review is "sharply limited." *Wright v. West*, 505 U.S. 277, 296 (1992). A court that is "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. This is because it is the jury's province to weigh the evidence and to draw reasonable inferences therefrom. *Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004).

Because sufficiency of the evidence is a mixed question of law and fact, both subsections 2254(d)(1) and (d)(2) apply to the review. *Maynard*, 468 F.3d at 673. In other words, the issues are "whether the facts are correct and whether the law was properly applied to the facts." *Id.* Subsection 2254(e) requires me to presume the jury's factual findings were correct unless Narro points to clear and convincing evidence to overcome the presumption. *Id.* at 674.

In evaluating the evidence, I must look to state substantive law for the elements of the crime. *See Turrentine*, 390 F.3d at 1197. Narro was charged with residential burglary—specifically, that he entered Foster's dwelling house without authorization and with the intent to commit a theft when he got inside. (RP 64.) Therefore, the State had to prove that Narro entered without authorization and that he intended to commit a theft. *See* N.M. STAT. ANN. § 30-16-3; UJI 14-1630, NMRA. The State also had to prove that Foster's house was a "dwelling house," meaning "any structure, any part of which is customarily used as living quarters." UJI 14-1631, NMRA.

11

The New Mexico Court of Appeals stated, "To determine whether the evidence is sufficient to support the verdict we review the evidence to determine whether any rational jury could find each element of the offense to be established beyond a reasonable doubt." (Doc. 14 Ex. L at 2.) Thus, the court correctly identified the governing law. In rejecting Narro's argument that the State failed to prove the intent element, the court cited the evidence that he entered the house without permission, removed items that did not belong to him, and told the officers that he had broken into the house. (*Id.* at 2-3.) The court noted the following evidence that was relevant to deciding whether that the house was a dwelling: the house was a rental house; it was vacant; and it was being painted and repaired for the next tenant. (*Id.* at 2.) Although the court did not directly address Narro's argument that the evidence was insufficient to establish that the house was a dwelling, the court did conclude that it was proper to give the "dwelling house" instruction. The court determined that the house was a dwelling because there was no evidence that it had been abandoned. (*Id.* at 4-5.)

The appellate court's decision was not unreasonable. The jury could infer that Narro intended to commit a theft when he entered the house because he did in fact take items from the house. The State was not required to offer the items or photographs of the items into evidence. There was also sufficient evidence to establish that the house was a dwelling, *i.e.*, that it was customarily used as living quarters. It had only been vacant for approximately three weeks and it was being refurbished to be rented again. *See generally* Annotation, *Occupant's Absence from Residential Structure as Affecting Nature of Offense as Burglary or Breaking and Entering*, 20 A.L.R. 4th 349 (collecting cases that indicate that courts would take different views as to whether an unoccupied rental house is a dwelling).

12

In his federal habeas application, Narro seems to argue that the evidence was insufficient to establish that he entered the house. This specific argument was not raised on direct appeal and therefore was not expressly considered by the appellate court. It is clear, however, that the evidence was sufficient on this element. Narro testified that he entered the house, and the officers testified that he told them he went inside the house. In addition, Officer Hamner testified that he saw Narro on the property carrying the trash bag and bucket full of cleaning supplies. Hope Stroud testified that the cleaning supplies that were returned to her by the police had been stored inside the house.

## CONCLUSION

I recommend that Narro's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody be denied and that this cause be dismissed with prejudice.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

                                                   _____
                                                   WILLIAM P. LYNCH
                                                   UNITED STATES MAGISTRATE JUDGE